# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTINO RECCHIA,<br><br>                Plaintiff,<br>     v.<br>CITY OF LOS ANGELES DEPARTMENT OF ANIMAL SERVICES, et al.,<br><br>                Defendants. | ) Case No. CV 12-7468 DDP (MRW)<br>)<br>) REPORT AND RECOMMENDATION<br>) OF UNITED STATES MAGISTRATE<br>) JUDGE<br>)<br>)<br>)<br>)<br>)<br>) |

     This Report and Recommendation is submitted to the Honorable Dean D. Pregerson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.    SUMMARY OF RECOMMENDATION**

     This is a <u>pro se</u> civil rights action. Plaintiff Recchia contends that municipal animal control workers improperly seized and euthanized birds from his homeless encampment.

Defendants move for summary judgment. Based on the uncontroverted evidence, it is apparent that the animal control officers did not illegally seize his birds, did not make the decision to kill Plaintiff's pigeons, and did not violate his due process rights. Moreover, there is no evidence from which a reasonable jury could find that the City itself acted unconstitutionally against Plaintiff. The Court therefore recommends that Defendants' motion for summary judgment be granted.

## II. FACTS AND PROCEDURAL HISTORY

The parties' briefs and supporting declarations, transcripts, other documentation, and the information elicited at oral argument establish the following:

### A. Animal Control Officers Seize Plaintiff's Birds

In late November 2011, Plaintiff lived on a sidewalk in the City of Los Angeles. Plaintiff had numerous cardboard boxes, crates, and pieces of furniture stacked on the sidewalk. Inside those items, Plaintiff kept a crow, a seagull, and 18 pigeons. City Animal Control Officers Rodriquez and Weekley responded to a complaint regarding Plaintiff's birds. Some of the birds and their crates were in plain view. (Docket # 24-5 at 3.) The boxes and drawers in which Plaintiff housed the animals were dirty, cramped, and wet, and had little ventilation. (Docket # 24-6 at 5-34.)

The officers ultimately seized all of the birds from the sidewalk encampment. The reason for seizing the crow and seagull was that Plaintiff did not have the required permit to possess them. (Docket # 24-5 at 3.) As to the pigeons, many of them were in obviously distressed or diseased condition. Photos of these

birds show large tumors, open wounds, missing feathers, overgrown beaks and nails, and feces-encrusted feet.[1] (Docket # 24-6 at 23, 32; # 24-4 at 11-43.)

Some of the birds did not have visible injuries or impairments. However, given the close and unsanitary conditions in which Plaintiff kept them, the animal control officers suspected that all of the birds carried common avian illnesses. (Docket # 24-5 at 5.) The animal control officers asked Plaintiff if he could safely house the birds at a different location. Plaintiff was not able to identify a specific location. The officers also claim that Plaintiff became physically abusive with them. (Docket # 24-5 at 4-6.)

The officers then impounded all of the birds pursuant to California Penal Code section 597.1(a).[2] The officers gave Plaintiff written notice that he could request an administrative hearing under Penal Code section 597.1(g) at which he could appear and attempt to reclaim the birds.

### B. The Animals Are Euthanized

On the day after the seizure, a city veterinarian examined the birds. The veterinarian determined that the crow and seagull could be rehabilitated by private rescue organizations. However, the veterinarian concluded that all of the pigeons had to be put down.

According to his detailed declaration, the veterinarian examined all of the animals. He found considerable physical, neurological, and bacteriological impairments with most of the pigeons. Many of the birds were unable to fly due to their profound disabilities. Some were unable to eat because of their conditions.

---

[1] At oral argument, Plaintiff described the pigeons as his pets. He also suggested that he rescued ill or injured birds that he found in the community.

[2] That statute provides, in relevant part, that when an animal control officer "has reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal or the health or safety of others, the officer shall immediately seize the animal."

1  (Docket # 24-4 at 4-6.)  The veterinarian determined that all of the birds –
2  including those with no visible impairments – had been exposed to serious
3  bacterial and viral diseases, and that the non-injured birds were likely incubating
4  diseases contracted from the others.  (Docket # 24-4 at 7-9.)  Additionally, the
5  veterinarian opined that the birds faced severe health risks if returned to the living
6  conditions from which they were seized.
7       Neither the city nor any rescue organization would be able to take these
8  birds in their dire conditions.  From this, the veterinarian – and not the individual
9  animal control officers – made the decision to euthanize all of the pigeons.
10  (Docket # 24-4 at 9.)  The veterinarian relied on Penal Code section 597.1(i),
11  which authorizes a veterinarian to "humanely destroy an impounded animal
12  without regard to the prescribed holding period" when the veterinarian determines
13  that the animal has "incurred severe injuries or is incurably crippled."
14      **C.**    **The Administrative Hearing**
15       Several days after the city seized Plaintiff's birds – and after the pigeons had
16  been destroyed – Plaintiff submitted a request for an administrative hearing with
17  the city agency.  At that hearing, Plaintiff learned that his animals had already been
18  euthanized for health reasons.  No further substantive activity occurred at the
19  hearing.  (Docket # 28-1 at Ex. B.)
20      **D.**    **The Civil Action**
21       Plaintiff filed a civil rights complaint in this Court against the City and the
22  two animal control officers (Rodriquez and Weekley) who seized the birds on the
23  street.  Although the pro se complaint contains some ambiguity, Plaintiff alleges
24  that Defendants unreasonably seized and killed the animals in violation of the
25  Fourth and Fourteenth Amendments.  (Docket # 3 at 8-12.)  Plaintiff also brings a

1  Monell claim[3] against the City for the municipality's "policy or custom" that led to
2  the alleged violation of his civil rights.  (Docket # 3 at 13-18.)  Finally, he alleges
3  state law torts of conversion, intentional infliction of emotional distress, and
4  negligent infliction of emotional distress.  (Docket # 3 at 18-22.)

     Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Docket # 24.)  The defense submitted declarations from the officers involved in the seizure of the animals and the veterinarian who euthanized the birds, photos of the birds and Plaintiff's encampment, and excerpts from Plaintiff's deposition transcript.

     In response, Plaintiff submitted a written statement opposing the motion, his declaration, and other written materials.  (Docket # 28.)  He argues that some of his birds were not "in as bad condition as defendants are presenting them."  (Docket # 28-1 at 4.)  Plaintiff also vigorously disputes certain factual assertions regarding his encounter with the animal control officers on the street at the time of the seizure.  Specifically, he declares that he did not consent to the search or seizure of the animals from the sidewalk.  (Docket # 28-1 at 3.)

     However, Plaintiff offered no medical or veterinary evidence regarding the condition of the birds at the time of their seizure.  Also, Plaintiff does not dispute the City's statements regarding the animals' conditions or the state of their housing.  Indeed, Plaintiff views himself as having rescued many of the birds that he knew to be in poor health.  (Docket # 28-1 at 2.)  Notably, he offers no evidence that either of the individual officers actually killed any of the birds.  Furthermore, Plaintiff does not dispute that his encampment, the boxes and other locations holding the birds, and some of the animals were in plain view on the sidewalk.

---

[3]     Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

5

## III. STANDARD OF REVIEW AND PERTINENT LAW

### A. Legal Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A "genuine dispute" about a "material fact" exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The substantive law that defines the elements of a claim will identify which facts are "material." Id. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id.

The party moving for summary judgment must present admissible evidence establishing that there is no genuine, material factual dispute and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court views the inferences it draws from the underlying facts in the light most favorable to the nonmoving party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest on its own conclusory allegations or mere assertions; it must set forth non-speculative evidence of specific facts. Emeldi v. University of Oregon, 673 F.3d 1218, 1233 (9th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue for trial. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita).

### B. Fourth / Fourteenth Amendment Claims
#### 1. Relevant Law

The homeless are entitled to the Fourth Amendment's protection against unreasonable searches and seizures of their possessions. Lavan v. City of Los Angeles, 693 F.3d 1022, 1027-30 (9th Cir. 2012). Those protected possessions include animals that an individual owns or keeps as pets. San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005) (shooting of dogs during execution of search warrant potentially unreasonable).

The Fourth Amendment does not prohibit all "state-initiated searches and seizures; it merely proscribes those which are unreasonable." Florida v. Jimeno, 500 U.S. 248, 250 (1991). A warrantless search or seizure of private property "is per se unreasonable under the Fourth Amendment – subject only to a few narrow exceptions." Morgan v. United States, 323 F.3d 776, 781 (9th Cir. 2003) (quotation omitted). Among the recognized exceptions are exigency – where entry or seizure is necessary to prevent "the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts" – and emergency – when officers have "an objectively reasonable basis for concluding that there is an immediate need to protect others or themselves from serious harm." Sims v. Stanton, 706 F.3d 954, 960 (9th Cir. 2013) (quotations omitted).

An individual also has a right to due process when the government takes property. A municipality may not "take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." Clement v. City of Glendale, 518 F.3d 1090, 1093 (9th Cir. 2008). In practice, this means that a government agency must take "reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." Lavan, 693 F.3d at 1032 (quotation omitted). However, exigent circumstances may relieve a municipality of its procedural due process obligations.

1  United States v. James Daniel Good Real Property, 510 U.S. 43, 62 (1993); Walnut
2  Hill Estate Enterprises, LLC v. City of Oroville, 407 F. App'x 168, 169 (9th Cir.
3  2010) ("Procedural due process does not require authorities evacuating a building
4  to afford prior notice and a hearing when circumstances are exigent.")

5        The seizure of the birds in this case was conducted based on animal control
6  provisions of the California Penal Code. Under the state statutory scheme, animal
7  control officers may seize an animal without a warrant when there are "reasonable
8  grounds to believe that very prompt action is required to protect the health or
9  safety of the animal or the health or safety of others." Cal. Penal. C. § 597.1(a).
10 That provision requires an animal control officer to give the animal owner notice
11 of an administrative hearing to "determine the validity of the seizure or
12 impoundment." Cal. Penal. C. § 597.1(f). At that hearing, the owner must
13 demonstrate that he or she "can and will provide the necessary care for the animal."
14 Cal. Penal. C. § 597.1(j). However, a veterinarian may euthanize any animal at
15 any time – including in the interval between seizure of the animal and the
16 administrative hearing – if there is a determination that the animal "has incurred
17 severe injuries or is incurably crippled." Cal. Penal. C. § 597.1(i).

18       Numerous courts have observed that the provisions of Section 597.1 are
19 equivalent to the exigent circumstances or emergency exceptions to the warrant
20 requirement. See, e.g., Broden v. Marin Humane Society, 70 Cal. App. 4th 1212,
21 1220-21 (1999); Anderson v. Smith, CV 06-1795 OWW (SMS), 2009 WL
22 2139311, at *14-16 (E.D. Cal. 2009); Jackson v. Silicon Valley Animal Control
23 Auth., No. C 07-5667 RS, 2008 WL 4544455, at *4, 8 (N.D. Cal. 2008). As a
24 result, an animal control officer who has a factual basis for relying on the
25 immediate seizure component of Section 597.1(a) will have demonstrated "exigent
26 circumstances" sufficient to satisfy the Fourth and Fourteenth Amendments.
27 See Jackson, 2008 WL 4544455 at *8 (granting summary judgment for officers
28 who entered property to seize dogs with visibly broken jaw or "wearing a diaper to

control bleeding"); Anderson, 2009 WL 2139311 at *16 (summary judgment appropriate where puppies at residence were "in horrible physical condition, stank of urine, and were visibly ill"); see also Bakay v. Yarnes, 431 F. Supp. 2d 1103, 1110-11 (W.D. Wash. 2006) (granting summary judgment under similar Washington statute where euthanization of animal "that is severely suffering" occurred before procedural hearing).

### 2. Analysis

Construing the evidence in the light most favorable to Plaintiff, there is no genuine dispute of material fact regarding his constitutional claims against the individual officers or the City. The uncontroverted evidence demonstrates that Plaintiff possessed numerous wild birds at his makeshift encampment. Some of the birds and their crates were in plain view, and the animals were obviously unwell. The full-color photos attached to the defense declarations show their poor conditions in graphic detail. The animals suffered from open wounds, gross deformities, malnourishment, and other apparent miseries. Given the animals' condition and the unhygenic state of their housing, exigent circumstances existed for the officers to search for and seize the suffering animals. Based on this evidence, a reasonable factfinder would have to conclude that the officers acted in an objectively reasonable manner in doing so. See Jackson and Anderson.

Plaintiff does not dispute the conditions under which he and the birds lived, nor does he challenge the officer's determination to seize the injured birds. Plaintiff contends that some of the seized birds had no apparent injuries. From this, he argues that the officers improperly took those animals without allowing him the chance to find another home for those birds. However, Plaintiff offers no evidence that he was able to care for those birds in a humane way. Plaintiff could not explain to the officers where he intended to house the birds. The officers were aware that Plaintiff had previously kept all of the birds in inadequate and deficient conditions. Moreover, the officers and the veterinarian stated that the birds likely

were already infected with serious illnesses based on their past treatment. Plaintiff failed to present sufficient evidence to establish a genuine issue regarding the reasonableness of the officers' actions under the Fourth Amendment.

Following the street-side seizure of the birds, Plaintiff was entitled under state law to a hearing regarding whether he could reclaim the animals. However, that law expressly allows a trained veterinarian to euthanize an animal in a humane manner at any time to alleviate suffering. The City's veterinarian submitted an uncontroverted and convincing declaration explaining in detail why he decided to put these birds down.

The impact of that statement is two-fold. First, it was the veterinarian – not the officers – who actually killed the animals. That refutes Plaintiff's contentions throughout the federal and state causes of action in the complaint that Defendants Weekley and Rodriquez allegedly killed the birds.

More importantly, though, the veterinarian's decision to euthanize the birds was obviously based on exigent circumstances regarding the health of the animals. See Cal. Penal. C. § 597.1(i). To have put off that decision to allow an administrative hearing (that, from the record, Plaintiff waited several days to request) would have meant further animal suffering in the name of Plaintiff's procedural rights. No reasonable jury could find that the City acted unconstitutionally to deprive Plaintiff's due process rights under the undisputed medical circumstances. Summary judgment is appropriate on Plaintiff's Fourteenth Amendment claim.[4]

---

[4] Given Plaintiff's inability to support his civil rights claims, the Court declines to take up the defense's alternative arguments, including the qualified immunity defense. That analysis is comprised of a two-part inquiry. First, the court determines whether a official violated a plaintiff's constitutional right. Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) (en banc). Second, the court
(continued...)

## C. *Monell* Claim

A governmental agency may be held liable for the alleged actions of its employees when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to government 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 690-91 (1978). To maintain such a claim, a plaintiff must plead and prove that: (1) plaintiff possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) this policy amounted to deliberate indifference to the plaintiff's constitutional right; and, (4) the policy was the moving force behind the constitutional violation. Doughtery v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).

The City is entitled to summary judgment on Plaintiff's Monell claim. Plaintiff points to no evidence of any City policy or custom that caused the individual officers to violate Plaintiff's constitutional rights. Rather, officers clearly acted based on identifiable exigent circumstances observed in the field and confirmed by the veterinarian shortly afterward. As such, there was no constitutional violation, and no basis for extending municipal liability here. Stated in another manner, there is no evidence of any "policy" that caused the officers to act in the manner that injured Plaintiff.

---

[4](...continued)
determines whether the constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. Id. at 440. Here, the Court concludes that Plaintiff did not present evidence sufficient to show that any Defendant violated his constitutional rights. That conclusion renders the issue of qualified immunity (or any other affirmative defenses) moot.

Plaintiff contends that the seizing officers improperly claimed that Plaintiff could not move some of his not-apparently-injured pigeons to his friend's house because that location was too far from Plaintiff's encampment. (Docket # 28-1 at 2.) Broadly construed, this contention could conceivably suggest a city policy regarding how and when seizures occur. Even so, though, Plaintiff does not present any evidence to support his claim that any policy actually existed that led to any constitutional injury to him. Moreover, the other bases for the officers' decision to seize the animals – the likelihood of cross-infection, the poor hygenic conditions under which the birds lived, Plaintiff's inability to identify with any specificity where he intended to care for the animals – are clearly established and supported by uncontradicted evidence. From this, the Court concludes that no reasonable jury could return a verdict for Plaintiff and against the City on this Monell claim. Summary judgment for the City is appropriate.

### D.  **State Tort Claims**

As to Plaintiff's remaining state law tort claims, summary judgment is also appropriate for the City and its employees. Plaintiff seeks to recover against the Defendants for conversion, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendants assert numerous and meritorious defenses – lack of statutory authority to pursue these tort claims against the City, immunity from liability under the California Government Code, etc. – but the most convincing argument is simply Plaintiff's lack of evidence on the merits of his action.

All of Plaintiff's state tort claims require proof that the defendant acted wrongly in some manner. See, e.g., Hartford Financial Corp. v. Burns, 96 Cal. App. 3d 591, 598 (1979) (elements of conversion cause of action include proof that defendant's conversion of plaintiff's property committed "by a wrongful act"). Here, however, the undisputed evidence shows that the Defendants took Plaintiff's birds (and presumably caused him to suffer distress) through a lawful exercise of

law enforcement authority.  As explained above, no reasonable jury could plausibly find for Plaintiff at trial on any of these tort claims because Plaintiff cannot adduce any proof that Defendants acted wrongly or unreasonably. Defendants are entitled to summary judgment on the merits of these causes of action.

## IV.     RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) accepting the findings and recommendation in this Report; (2) granting Defendants' motion for summary judgment; and (3) dismissing the action with prejudice.

DATED: August 7, 2013    _____
HON. MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE