**O**



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARTINO RECCHIA,

Plaintiff,

v.

CITY OF LOS ANGELES DEPARTMENT OF ANIMAL SERVICES, et al.,

Defendants.

Case No. CV 12-7468 DDP (MRW)

**ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

[Dkt. 68]

Presently before the court is a Motion for Judgment on the Pleadings, filed by Defendants City of Los Angeles Department of Animal Services (the "City"), Animal Control Officers Yvonne Rodriguez ("Rodriguez") and Robert Weekley ("Weekley"), and Dr. Steven Feldman ("Dr. Feldman") (collectively, "Defendants"). (Dkt. 68.) Pursuant to 28 U.S.C. § 636, the court has reviewed the submissions of the parties, the Report and Recommendation of the United States Magistrate Judge, ("R&R") and the objections

thereto. Having done so, the court DENIES in part, and GRANTS in part, Defendants' Motion, and adopts the following Order.

**I. BACKGROUND[1]**

**A. Plaintiff's Birds Are Seized and Euthanized**

In November 2011, Martino Recchia ("Plaintiff") lived on a sidewalk in the City of Los Angeles. He had numerous cardboard boxes, crates, and pieces of furniture stacked on the sidewalk. Inside these items, Plaintiff kept a crow, a seagull, and eighteen domestic pigeons. Plaintiff rescued some of the birds, and raised others for years as pets.

Two City Animal Control Officers, Defendants Rodriguez and Weekley, seized the animals from Plaintiff. The structures housing the birds were dirty, wet, cramped, and had little ventilation. Many of the birds were in obviously distressed or diseased condition. Some had large tumors, open wounds, missing feathers, overgrown beaks and nails, and feces-encrusted feet. Several of the birds, however, did not have visible injuries or impairments.

Plaintiff could not identify a clean, safe location where he could house the birds. The officers therefore seized the birds without a warrant pursuant to California Penal Code section 597.1(a) (authorizing immediate seizure of animal if officer "has reasonable grounds to believe that very prompt action is required to protect the health or safety" of the animal or others).

A city veterinarian, Defendant Dr. Feldman, subsequently concluded that the pigeons had to be euthanized. (The crow and seagull were placed with a rescue organization.) The veterinarian opined that all the birds—both those with visible injuries/health problems and those without—had been exposed to serious bacterial and

[1] The facts and procedural history are largely drawn from the R&R. (See Dkt. 82, Report and Recommendation at 2-5.)

viral disease. The City therefore euthanized the birds before any administrative hearing occurred.

**B. The Original Complaint and Appeal**

Plaintiff filed this *pro se* civil action in federal court. The original complaint alleged violations of Plaintiff's Fourth and Fourteenth Amendment rights based on the unlawful seizure of his animals. Plaintiff also pled a Monell claim against the City, as well as various state law tort causes of action.

Defendants moved for summary judgment on all claims, and the Magistrate Judge recommended that the motion be granted in its entirety. This Court accepted the recommendation and entered judgment against Plaintiff.

Plaintiff appealed the decision with the assistance of appointed counsel. In a published decision, the Ninth Circuit affirmed the entry of summary judgment as to the warrantless seizure/euthanization of the birds "that appeared sick." The appellate court also affirmed the decision to grant summary judgment on Plaintiff's due process claims against the individual officers, and as to all of the state law claims. Recchia v. City of Los Angeles Dep't of Animal Servs., 889 F.3d 553, 559-64 (9th Cir. 2018).

However, the Ninth Circuit determined that there was "a genuine factual dispute about whether the [eight] healthy-looking birds posed any meaningful risk to other birds or humans at the time they were seized." Id. at 560. The court therefore remanded for further proceedings on Plaintiff's Fourth Amendment warrantless seizure claim. The panel further instructed the district court "to consider in the first instance whether the Officers are entitled to qualified immunity for any potential constitutional violation because it was not 'clearly established' at the time of the seizure that the warrantless seizure of the birds could be a violation of Recchia's constitutional rights." Id.

The circuit court also directed the district court to consider whether to allow Plaintiff permission to amend his complaint to assert "a new theory of municipal liability" regarding his Monell claim. Id. at 564.

**C. The Action on Remand**

On remand, the Magistrate Judge appointed counsel and granted Plaintiff leave to file a First Amended Complaint ("FAC"). The FAC alleged two civil rights causes of action under 42 U.S.C. § 1983. The first, against the City, Officers Rodriguez and Weekley in their individual and official capacities, and Dr. Feldman in his official capacity only, alleges a Fourth Amendment violation based on the warrantless seizure and destruction of the eight non-ill pigeons. The second, against the City and Dr. Feldman, again in his official capacity only, alleges a Fourteenth Amendment violation based on the alleged failure to provide adequate notice and opportunity for Plaintiff to reclaim the animals before they were put down.

Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## II. LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed [] but early enough as not to delay the trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper when the moving party clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990); Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984). The standard applied on a Rule 12(c) motion is essentially the same as that applied on a Rule 12(b)6) motion to dismiss for failure to state a claim, with the court accepting all of the non-moving party's allegations as true. Lyon v. Chase Bank USA, N.A., 656 F.3d 877, 883 (9th Cir. 2011).

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to

the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the defendant-unlawfully-harmed-me assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

**III. DISCUSSION**

**A. 42 U.S.C. § 1983 Claim – Fourth Amendment Violation**

Plaintiff brings a Section 1983 claim against Defendants for violations of the Fourth Amendment. Plaintiff alleges that Defendants "violated Plaintiff's Fourth Amendment rights when they seized and destroyed Plaintiff's pigeons without a warrant and in the absence of exigent circumstances." (FAC ¶ 25.)

The Fourth Amendment protects individuals from unreasonable government searches and seizures of their property. U.S. Cons. Amend. IV; Menotti v. City of Seattle, 409 F.3d 1113, 1152 (9th Cir. 2005). "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." Minnesota v. Dickerson, 508 U.S. 366, 372 (1993). For example, it is well settled that "objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." Payton v. New York, 445 U.S. 573, 587-89 (1980); Washington v. Chrisman, 455 U.S. 1, 5 (1982).[2] Similarly, "contraband

---

[2] If, however, the officers lack "probable cause to believe that an object in plain view is contraband . . . . *i.e.*, if its incriminating character [is not] immediately apparent . . . the plain-view doctrine cannot justify its seizure." Minnesota, 508 U.S. at 375 (internal citations and quotations omitted). Probable cause exists when the "facts available to the

property . . . can always be destroyed, however found," provided the officers discover the property in a place where they have a right to be. Ramsey v. United States, 245 F.2d 295, 296 (9th Cir. 1957).

Defendants insist that no Fourth Amendment violation arose because, at the time Plaintiff's pigeons were taken and euthanized in 2011, Plaintiff illegally possessed the pigeons. Specifically, Defendants contend that Plaintiff had no property rights in his pigeons because, at the time, pigeon ownership was illegal under California Law. See United States v. McCormick, 502 F.2d 281, 288 (9th Cir. 1974); see also United States v. Jeffers, 342 U.S. 53-54 (1951). Thus, Defendants argue, there was probable cause to believe that Plaintiff's pigeons were "contraband," which Defendants were permitted to seize and euthanize without a warrant. Jeffers, 342 U.S. at 53 (1951).

Defendants rely on provisions of the California Fish and Game Code, as well as their regulatory counterparts, for the proposition that it was unlawful for Plaintiff to possess pigeons in 2011. However, Defendants' interpretation is at odds with the plain language of the statute and its corresponding regulations. The Code and regulations set forth rules regarding the taking of various animals, including "nongame" birds such as Plaintiff's pigeons. For example, in 2011, Section 2002 provided that, "[i]t is unlawful to possess a bird . . . taken in violation of this code or a regulation adopted pursuant to this code." Cal. Fish & Game Code § 2002. The Code also stated that "[i]t is unlawful to capture any . . . nongame bird . . ., or to possess or confine any . . . nongame bird . . . taken from the wild, except as provided by this code or regulations made pursuant thereto." Id. § 3005.5. Likewise, the Code stated that "[i]t is unlawful to take any

---

officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983) (citation omitted).

nongame bird except as provided in this code or in accordance with regulations of the commission . . . ." Id. § 3800(a).

Defendants gloss over the fact that "take" is a legally defined term under the Code. To "take" means to "hunt, pursue, catch, capture, or kill, or attempt to hunt, pursue, catch, capture, or kill." Cal. Fish & Game Code § 86. Although Defendants appear to assume that Sections 2002, 3005.5, and 3800(a) prohibited the simple possession of pigeons, the court finds no provision or regulation that warranted such interpretation. Indeed, a common-sense reading of the cited provisions suggests otherwise. Based on the plain language of the statute, it appears that the only way Plaintiff could have illegally possessed his pigeons is if Plaintiff had unlawfully "taken" them from the wild.

Having reviewed the FAC, the court finds that the allegations support the inference that Plaintiff's pigeons were not unlawfully taken from the wild. The FAC alleges that Plaintiff "rais[ed]," "rescu[ed]," "owned and cared for more than 100 pigeons while living in [his] house . . . ." (FAC ¶ 13.) Plaintiff further alleges that when he became homeless, he "kept his birds with him in the abode he created for himself and his pets on the streets of Los Angeles," and that some of his birds "had been his pets for more than ten years." (Id.) Accepting these allegations as true, Plaintiff's mere possession of his pigeons was not unlawful, absent additional facts about how the pigeons were acquired. Thus, at this stage, Plaintiff has adequately alleged that he had a cognizable property interest in his eight healthy pigeons at the time they were seized and euthanized.

Accordingly, Plaintiff has stated a plausible Fourth Amendment claim.

**B. Qualified Immunity**

Defendants also argue, in the alternative, that even if Defendants Weekley and Rodriguez violated Plaintiff's constitutional rights, they are entitled to qualified immunity because the law on pigeon ownership was not "clearly established" in 2011.

"The Ninth Circuit applies a two-prong analysis to determine whether officials are entitled to qualified immunity: (1) whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether that right was clearly established at the time of the event." Rosenbaum v. Washoe Cnty., 663 F.3d 1071, 1075 (9th Cir. 2011).

For purposes of resolving Defendants' motion for judgment on the pleadings, the court assumes that the FAC states plausible Fourth Amendment claims against Defendants Weekley and Rodriguez, for the reasons stated above. Thus, the dispositive issue before the court is whether it would have been clear to a reasonable official that Plaintiff had a cognizable property interest in his pigeons at the time they were seized and euthanized. Saucier v. Katz, 533 U.S. 194, 202 (2001).

Here, Defendants contend that the law was not "clearly established" because "(1) there existed no federal or state law cases discussing a person's Fourth Amendment rights as to birds taken from the wild; (2) the Fish & Game Code and related regulations made it unlawful to capture or possess such birds; and (3) the 'plain view' doctrine permitted an officer to seize contraband discovered in the course of a lawful search." (Mot. at 15.) Defendants' arguments are without merit. The right to be free from an unreasonable seizure that is neither supported by probable cause nor conduct that constitutes a criminal violation, is clearly established. See Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) ("The Supreme Court has made clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment."). The lack of a case on all fours with the facts at hand is not sufficient to confer qualified immunity. Even assuming that the law was unclear as to the legality of possessing pigeons taken from the wild, there is no indication in the pleadings that officers had any reason to believe Plaintiff's pigeons had been "taken." See Rosenbaum, 663 F.3d at 1079 (concluding that officials were not entitled to qualified immunity

because the "statute [was] unambiguous, and not susceptible to the reading that the county suggest[ed]. Therefore, no reasonable officer could believe that [Plaintiff's] conduct violated [the] statute."); see also Liberal v. Estrada, 632 F.3d 1064, 1078 (9th Cir. 2011) (denying qualified immunity because the officer's mistake was unreasonable). Indeed, the factual allegations do not suggest that Plaintiff had either committed a crime or that Plaintiff's pigeons were contraband.

Construing all of the facts in the FAC in the light most favorable to Plaintiff, the court declines to grant Defendants' Motion on qualified immunity grounds. Accordingly, Defendants' Motion is DENIED with respect to Plaintiff's Section 1983 claims for the warrantless seizure and destruction of Plaintiff's pigeons.

**C. Monell Liability – Fourth and Fourteenth Amendment Claims**

Next, the court addresses Plaintiff's Section 1983 claims for municipal liability against the City.[3] Plaintiff's claims against the City are premised on the City's alleged unconstitutional practice or custom of euthanizing "visibly healthy impounded birds" without "testing them for illnesses." (*See* FAC ¶ 22.) Defendants contend that Plaintiff's Monell claims fail as a whole because, absent any cognizable property interest, Plaintiff cannot state any Fourth or Fourteenth Amendment claim, let alone any violation for which the City is liable.

As discussed above, Plaintiff sufficiently alleges that he had a constitutionally protected property interest in his pigeons at the time they were seized and subsequently

---

[3] Although Plaintiff also asserts constitutional claims under Section 1983 against Dr. Feldman in his official capacity, such claims are duplicative of Plaintiff's Monell claim against the City. Lallemand v. Cnty. of Los Angeles, No. LACV1700781JAKSSX, 2018 WL 6136816, at *5 (C.D. Cal. June 12, 2018); see also Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."); Luke v. Abbott, 954 F. Supp. 202, 203 (C.D. Cal. 1997).

euthanized. Therefore, under the alleged facts, Plaintiff has sufficiently stated a Fourth Amendment violation for purposes of his Monell claims. The same can be said with respect to the alleged Fourteenth Amendment violations. Where a person's property is taken by the government, the due process clause of the Fourteenth Amendment requires some form of notice and a hearing. Matthews v. Eldridge, 424 U.S. 319 (1976). Here, Plaintiff alleges that his "eight healthy pigeons presented no symptoms of disease" and there were no exigent circumstances that warranted killing his pigeons. (Id. ¶ 21-22.) Plaintiff alleges that Defendants euthanized Plaintiff's pigeons without post-seizure notice "that his birds were at risk of being destroyed," or "an opportunity for Plaintiff to be heard concerning his rights of ownership and the destiny of his seized pets." (FAC ¶ 28-30.) Nor did Defendants "provide any means of reclaiming them in a timely manner." (Id. ¶ 30.) The lack of notice and opportunity for hearing before his pigeons were destroyed violates Plaintiff's procedural due process rights. Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982) ("[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."); Schneider v. Cnty. of San Diego, 28 F.3d 89, 93 (9th Cir. 1994); Wong v. City of Honolulu, 333 F. Supp. 2d 942, 956 (D. Haw. 2004). Accordingly, Plaintiff has adequately alleged a due process claim under the Fourteenth Amendment.

Plaintiff, however, has not alleged sufficient facts to support an inference that City's conduct was the moving force behind the constitutional violations. A municipality "may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the City can be shown to be a 'moving force' behind a violation of constitutional rights." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Absent a formal government policy, Plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). The alleged custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." Id. "Liability for improper

custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id.

Here, Plaintiff alleges generally that the City "adopted a policy, practice and custom" of euthanizing birds without testing for illness, and that pursuant to the City's "policies and practices regarding pigeons," "Dr. Feldman destroyed Plaintiff's healthy birds without having tested them for the presence of disease." (FAC ¶ 22.) Plaintiff's conclusory assertion as to the existence of a custom or practice, is unsupported by any facts that would establish a "persistent and widespread" course of conduct. Plaintiff provides no allegation that Dr. Feldman or any other City official committed similar acts on previous occasions. Rather, the allegations suggest that Dr. Feldman's conduct was an isolated incident, which is insufficient to plead a Monell claim on the basis of a widespread policy, custom, or practice. Christie v. Lopa, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional violation is ordinarily insufficient to establish a longstanding practice or custom."); see also Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011) ("[O[ur Monell decisions . . . have recognized that liability for improper custom may not be predicated on isolated or sporadic incidents and that the custom must be so persistent and widespread that it constitutes a permanent and well-settled city policy.") (internal citations omitted).

Accordingly, Defendants' Motion is GRANTED without leave to amend as to Plaintiff's Monell claims based on practice or custom.

///

///

///

///

///

///

**IV. CONCLUSION**

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings is denied, in part, and granted, in part. The Court DENIES Defendants' Motion with respect to Plaintiff's Fourth Amendment claims asserted against Defendants Weekley and Rodriguez. The Court GRANTS Defendants' Motion without leave to amend with respect to Plaintiff's Monell claims asserted against the City and Dr. Feldman.

**IT IS SO ORDERED.**

Dated: March 22, 2022

DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE